UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HORTENSIA RODRIGUEZ,

    Plaintiff,

v.                                                                                                  Case No. 8:23-cv-171-CPT

MARTIN O'MALLEY,
Commissioner of Social Security,[1]

    Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of her claim for Supplemental Security Income (SSI).  For the reasons discussed below, the Commissioner's decision is reversed, and the case is remanded.

I.

The Plaintiff was born in 1970, has a high school education, and has past relevant work experience as a nurse assistant, a cigar packer, and a panel installer. (R. 34, 58–59).  In March 2020, the Plaintiff applied for Disability Insurance Benefits (DIB) and SSI, alleging disability as of May 2016 due to anxiety, depression, insufficient iron, as well as shoulder and arm problems. (R. 73, 85).  The Social

---

[1] Mr. O'Malley became the Commissioner of Social Security on December 20, 2023.  Pursuant to Federal Rule of Civil Procedure 25(d), Mr. O'Malley is substituted for the former Acting Commissioner, Kilolo Kijakazi, as the Defendant in this suit.

Security Administration (SSA) denied the Plaintiff's applications both initially and on reconsideration. (R. 99–102, 146–53).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in January 2022. (R. 48–72, 208). The Plaintiff was represented by counsel at that proceeding and testified on her own behalf. (R. 48–72). A vocational expert (VE) also testified. (R. 67–70). In addition, the Plaintiff moved at the hearing to amend her onset date to March 2020, which the ALJ granted, thereby effectively terminating her DIB claim. (R. 54–55); (Doc. 21 at 1–2).

In a decision issued in March 2022, the ALJ found that the Plaintiff: (1) had not engaged in substantial gainful activity since her amended alleged onset date in March 2020; (2) had the non-severe impairments of venous insufficiency and gastroesophageal reflux disease, along with the severe impairments of depression, anxiety, obesity, anemia, chronic obstructive pulmonary disease (COPD), osteoarthritis in both knees, degenerative disc disease of the lumbar spine, and a rotator cuff tear in her left shoulder post-surgery; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listings;[2] (4) had the residual functional capacity (RFC) to perform light work subject to some restrictions; and (5) based on the VE's testimony, could not

---

[2] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). When a claimant's affliction matches an impairment in the listings, the claimant is automatically entitled to disability benefits. 20 C.F.R. § 416.920(a)(4)(iii); *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

engage in her past relevant work but could perform other jobs that exist in the national economy. (R. 22–43). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 36).

The Appeals Council denied the Plaintiff's request for review. (R. 1–9). Accordingly, the ALJ's decision became the final decision of the Commissioner. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021) (citation omitted).

II.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 416.905(a).[3] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[4] Under this process, an ALJ must assess whether the claimant: (1) is performing

---

[3] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.
[4] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listings; (4) has the RFC to engage in her past relevant work; and (5) can perform other jobs in the national economy given her RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004), *superseded on other grounds by* 20 C.F.R. § 404.1520c; 20 C.F.R. § 416.920(a)(4)). Although the claimant bears the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove she cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279 (citation omitted). In the end, "'the overall burden of demonstrating the existence of a disability . . . rests with the claimant.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the claimant's disability application after a hearing. 42 U.S.C. § 405(g). Judicial review is confined to determining whether the Commissioner applied the correct legal standards and whether the decision is buttressed by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and citations omitted). In evaluating whether substantial evidence bolsters the Commissioner's decision, a court may not decide the facts anew, reweigh the evidence, or make credibility determinations. *Viverette*, 13 F.4th at 1314 (citation omitted); *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)). Further, while a court will defer to the Commissioner's factual findings, it will not defer to his legal conclusions. *Viverette*, 13 F.4th at 1313–14; *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

### III.

The Plaintiff's sole claim on appeal is that the ALJ did not properly consider the severity of the Plaintiff's venous insufficiency. (Docs. 21, 23). The Commissioner counters that the ALJ correctly determined the Plaintiff's venous insufficiency was not severe and that the ALJ's decision is supported by substantial evidence. (Doc. 22). After careful review of the parties' submissions and the record, the Court finds that the Plaintiff's challenge has merit.

As noted above, the ALJ's task at step two is to gauge whether a claimant has a medically determinable impairment or combination of such impairments that is severe. *McCormick v. Soc. Sec. Admin., Comm'r*, 619 F. App'x 855, 857 (11th Cir. 2015) (per curiam); *see also* 20 C.F.R. § 416.920(a)(4)(ii). A medically determinable impairment is deemed to be non-severe "only if it is a slight abnormality which has

5

such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of [her] age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984). The Eleventh Circuit has characterized the severity analysis at step two as merely a "threshold inquiry," under which only "the most trivial impairments [are] to be rejected." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)); *see also Stratton v. Bowen*, 827 F.2d 1447, 1453 (11th Cir. 1987) (stating that "the application of a threshold severity regulation that is greater than de minimis is invalid under the terms of . . . the Social Security Act"). The bar for showing a severe medically determinable impairment is thus a low one, *McCormick*, 619 F. App'x at 857 (citation omitted), and the finding of any severe medically determinable impairment is enough to satisfy the step two inquiry, *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 891 (11th Cir. 2013) (per curiam) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

The ALJ's task at step four is—as also noted above—to determine a claimant's RFC and her ability to perform her past relevant work. *See* 20 C.F.R. §§ 416.920(a)(4)(iv), 416.960(b). To do so, an ALJ must decide given all of the pertinent evidence before her what a claimant can do in a work setting despite any physical or mental restrictions caused by her medically determinable impairments— severe and non-severe—and related symptoms. *Id.* § 416.945(a)(2) ("[The SSA] will consider all of [the claimant's] medically determinable impairments of which [it is] aware, including [the claimant's] medically determinable impairments that are not

6

'severe,' . . . when [the SSA] assess[es] [the claimant's] [RFC]."); *Schink*, 935 F.3d at 1268–69 ("Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC.") (citation omitted). An ALJ, however, need not expressly discuss every piece of evidence in her decision. *See Stowe v. Soc. Sec. Admin., Comm'r*, 2021 WL 2912477, at *4 (11th Cir. July 12, 2021) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)). Instead, the ALJ need only predicate her RFC determination on the claimant's condition "taken as a whole," *Jamison*, 814 F.2d at 588 (citations omitted), after evaluating all the material information presented, 20 C.F.R. §§ 416.920b, 416.945(a). As long as the Court can discern from the ALJ's decision that she assessed all the relevant evidence, the final responsibility for deciding a claimant's RFC rests with the ALJ. 20 C.F.R. § 416.945.

In this case, it appears from the pertinent portions of the record that the Plaintiff first sought treatment in September 2021 from Dr. Brandt Jones for leg pain, swelling, and muscle cramps in both of her lower extremities. (R. 823–25). Medical notes from that appointment reflect that the onset of the Plaintiff's condition "was gradual over the years" and that her "symptoms occur[red] frequently." (R. 823). Dr. Jones described the Plaintiff's "current treatment" as including rest, compression hose, and leg elevation, and he stated that the Plaintiff had been compliant with this plan. (R. 823).

The next month, in October 2021, an ultrasound and a lower extremity reflux/map was performed on the Plaintiff. (R. 821–22). At a follow-up visit, Dr. Jones diagnosed the Plaintiff with venous insufficiency and scheduled her for an

endovascular venous laser ablation. (R. 818–20). The Plaintiff underwent this procedure on the left greater saphenous vein later in October 2021 and returned for an ultrasound early the next month. (R. 816–17).

In mid-November 2021, Dr. Jones observed that the Plaintiff's "[s]ymptoms [had] improved with significant pain over lateral telangiectasias."[5] (R. 813). In addition, a physical examination revealed spider veins and edema on the Plaintiff's left and right legs, and her gait to be a slow and cautious. (R. 814–15). The Plaintiff was provided education regarding chronic venous insufficiency of the legs and instructed to follow up in six months or earlier if her symptoms worsened. (R. 815).

At the January 2022 hearing, the Plaintiff testified that she experienced pain due to circulation problems and that standing caused more pain. (R. 63). The Plaintiff further explained that she used compression stockings and elevated her legs to waist level two or three times each day for an hour or two. (R. 63–64).

In the ALJ's decision, the ALJ addressed the Plaintiff's venous insufficiency at step two. (R. 25). In doing so, the ALJ acknowledged that the Plaintiff was assessed with this condition in November 2021 and was advised to utilize compression stockings and to elevate her legs prior to undergoing surgery. *Id.* The ALJ concluded, however, that the Plaintiff's venous insufficiency was not a severe impairment because it did not "cause more than a minimal limitation [on the Plaintiff's] physical or mental

---

[5] Telangiectasias, also known as spider veins, are small, widened blood vessels on the skin. *See* https://www.pennmedicine.org/for-patients-and-visitors/patient-information/conditions-treated-a-to-z/telangiectasia-spider-veins (last visited Mar. 21, 2024)

ability to do basic work activities." *Id.* (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). In support of this finding, the ALJ explained that "[t]here was no note requiring elevation post-surgery." *Id.* The ALJ nonetheless proceeded to the later steps of the sequential evaluation process since she found the Plaintiff suffered from several other impairments that were severe. *Id.* The ALJ did not, however, separately discuss the Plaintiff's venous insufficiency at any other step or include a restriction in her RFC determination to account for the Plaintiff's need to elevate her legs. (R. 26–34).

  The Plaintiff now claims that the ALJ erred at step two in deeming her venous insufficiency to be a non-severe impairment. (Docs. 21, 23). To buttress this claim, the Plaintiff argues that the ALJ improperly relied on the lack of any documented instruction from Dr. Jones that she should continue leg elevation *after* the ablation. (Doc. 21 at 8). The Plaintiff has a point. The Eleventh Circuit has cautioned that a physician's silence regarding a claimant's functional capacity cannot be construed as an opinion that the claimant can work. *See Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). As the Eleventh Circuit explained in *Lamb*, this is because "[s]uch silence is equally susceptible to either inference," and thus "no inference should be taken." *Lamb*, 847 F.2d at 703; *see also Clyburn v. Comm'r, Soc. Sec. Admin.*, 555 F. App'x 892, 894 (11th Cir. 2014) (per curiam) ("When a doctor's silence about a claimant's ability to work is subject to competing inferences, we have stated that no inference should be drawn from that silence.") (citing *Lamb*, 847 F.2d at 703); *Brown v. Soc. Sec. Admin., Comm'r*, 2019 WL 1296325, at *6 (N.D. Ala. Mar. 21, 2019) ("[T]he ALJ's reliance

9

on the absence of a treating physician's opinion regarding disability to discredit [the claimant's] testimony regarding his pain was in error.").

This Eleventh Circuit's admonition in *Lamb* appears to apply here. Although the ALJ satisfied step two by finding at least one severe impairment, she still erred by hinging her non-severity determination regarding the Plaintiff's venous insufficiency on the absence of a post-ablation medical record that the Plaintiff should prop-up her legs. *See* (R. 25); *see also Lamb*, 847 F.2d at 703. As in *Lamb*, the lack of such a record was subject to conflicting interpretations, one of which was that Dr. Jones wished the Plaintiff to continue elevating her legs after the procedure. In fact, the Plaintiff testified that is what Dr. Jones actually recommended to her and that is what she did. (R. 63).

In an effort to avoid this conclusion, the Commissioner contends that the ALJ's step-two non-severity finding relative to the Plaintiff's venous insufficiency was proper because a severe impairment must last or be expected to last longer than twelve months, which—the Commissioner maintains—the record does not support. *See* 20 C.F.R. § 416.909 ("Unless [a claimant's] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least [twelve] months."). The problem with this assertion is that the Court can only rely on what the ALJ sets forth in her decision, not on post-hoc rationalizations offered by the Commissioner on appeal. *Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 872 (11th Cir. 2012) (per curiam) ("We cannot affirm based on a post hoc rationale that 'might have supported the ALJ's conclusion.'") (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam)); *Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729,

10

733 (11th Cir. 2011) (per curiam) (same). And here, the ALJ did not reference the durational requirement in evaluating the Plaintiff's venous insufficiency. (R. 25).

The Commissioner alternatively argues that the record bolsters the ALJ's challenged step-two determination since it supposedly demonstrates that the Plaintiff was no longer limited following her surgery. (Doc. 22 at 5). The flaw again with this claim is that it is predicated on a prohibited post-hoc rationalization and not on what the ALJ actually said. *Watkins*, 457 F. App'x at 872; *Dempsey*, 454 F. App'x at 733. While the Commissioner counters that findings of fact rest with the ALJ even if the record buttresses a contrary conclusion, he conspicuously fails to address *Lamb* or its progeny. (Doc. 22 at 5–6). Accordingly, the Court finds that the ALJ erred in assessing the Plaintiff's venous insufficiency at step-two.

As the Plaintiff recognizes, this finding does not end the matter. Ordinarily, an ALJ's mistake at step two can be cured at step four because the ALJ must consider all of a claimant's impairments—both severe and non-severe—at that stage.[6] *Schink*, 935 F.3d at 1268 (stating that an ALJ's finding that a claimant's impairment was non-severe at step two could be rendered harmless if the ALJ "duly considered [that] impairment when assessing [the claimant's] RFC" at step four); *Leon v. Saul*, 2020 WL 4048211, at *3 (M.D. Fla. July 20, 2020) ("Even if the ALJ erred by finding [the claimant's] colitis a non-severe impairment [at step two], such error [was] harmless

---

[6] Notably, the Commissioner does not raise this point of law.

because the ALJ considered [the claimant's] colitis at step four[.]") (citing *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011)).

To this end, the Plaintiff contends that the ALJ did not consider her venous insufficiency or her need for leg elevation at stage four at all. (Doc. 21 at 10–11). The Plaintiff also asserts that had the ALJ adopted a leg elevation restriction as part of her RFC determination, the Plaintiff would have been deemed disabled according to the VE. *Id.* at 11; (R. 70). The Plaintiff's argument is well-founded.

Notwithstanding the fact that the ALJ averred at step four that she "considered all symptoms" in formulating the Plaintiff's RFC (R. 29), her decision does not adequately establish that she evaluated the Plaintiff's venous insufficiency after determining it to be a non-severe impairment at step two. *See Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1064 (11th Cir. 2021) ("[A]lthough the ALJ stated he 'considered all symptoms,' his decision demonstrates that he did not."); *Schinck*, 935 F.3d at 1269 ("[A]lthough the ALJ stated he 'considered all symptoms' when assessing [the claimant's] RFC, the content of his decision demonstrates he did not."); *Johnson v. Comm'r of Soc. Sec.*, 2024 WL 863122, at *7 (M.D. Fla. Feb. 29, 2024) ("[D]espite stating that she 'considered all symptoms' in formulating [the claimant's] RFC, the ALJ's decision does not sufficiently demonstrate consideration of [the claimant's] traumatic brain injury and associated pain and headaches.") (citing *Pupo*, 17 F.4th at 1064). Rather, the ALJ discussed the Plaintiff's other impairments—namely, COPD, arthritis, a rotator cuff tear, and mental health diagnoses—but did not mention, much less determine, whether the Plaintiff's venous insufficiency would affect her ability to

work. (R. 29–34). The ALJ likewise did not reference, much resolve, the Plaintiff's testimony that she continued to wear compression socks and elevate her legs every day even after the ablation. (R. 63–64).

In sum, the Court has before it only the ALJ's improper interpretation of the lack of a record prescribing post-surgery leg elevation, and the ALJ's subsequent failure to address the Plaintiff's venous insufficiency at step four. As a result, reversal and remand is required. *See* 20 C.F.R. § 416.945(a)(2).

### IV.

In light of all the above, it is hereby ORDERED:

1. The Commissioner's decision is reversed, and the case is remanded for further proceedings before the Commissioner consistent with this Order.

2. The Clerk is directed to enter Judgment in the Plaintiff's favor and to close the case.

3. The Court reserves jurisdiction on the matter of costs pending a further motion.

SO ORDERED in Tampa, Florida, this 22nd day of March 2024.

*[signature]*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record